UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut corporation,<br><br>Plaintiff,<br>v.<br><br>JASON P. DECKER and DEBRA A. DECKER, husband and wife and the marital community composed thereof, et al.,<br><br>Defendants. | CASE NO. 2:24-cv-00253-TL<br><br>ORDER ON MOTION FOR RECONSIDERATION |

This matter is before the Court on Defendants'/Third-Party Plaintiffs' Motion for Reconsideration of the Court's October 28, 2024, Order on Third-Party Defendants' Motion to Dismiss (Dkt. No. 56). Dkt. No. 61. In that Order, the Court dismissed with prejudice all three of the Third-Party Plaintiffs' causes of action. *See* Dkt. No. 56 at 17.

The factual background of this case is recited in the Court's prior order and need not be repeated here. *See* Dkt. No. 56 at 2–5. The Third-Party Plaintiffs here are: (1) Jason P. Decker,

Debra A. Decker, and the marital community composed thereof; (2) WilDec, LLC; and (3) Decker & Williams, LLC (collectively, "Decker Defendants"). The Third-Party Defendants here are KeyBank, N.A., and Dale Conder (collectively, "KeyBank"). Having reviewed the Decker Defendants' Motion (Dkt. No. 61), KeyBank's Response (Dkt. No. 63), and the relevant record, the Court GRANTS IN PART and DENIES IN PART the motion.

## I.     LEGAL STANDARD

"Motions for reconsideration are disfavored." LCR 7(h)(1). Such motions are ordinarily denied absent "a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to [the Court's] attention earlier with reasonable diligence." *Id.* Motions for reconsideration should be granted only in "highly unusual circumstances." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 890 (9th Cir. 2009) (quoting *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)); *see also Inventist, Inc. v. Ninebot Inc.*, 664 F. Supp. 3d 1211, 1215 (W.D. Wash. 2023) (noting reconsideration is an "extraordinary remedy," and that the moving party bears a "heavy burden"). "A motion for reconsideration 'may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.'" *Id.* (emphasis in original) (quoting *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)). "Whether or not to grant reconsideration is committed to the sound discretion of the court." *Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003) (citing *Kona Enters.*, 229 F.3d at 883).

## II.    DISCUSSION

The Decker Defendants' Motion for Reconsideration is predicated on manifest error. In the motion, the Decker Defendants make three arguments. First, they argue that the Court misinterpreted the Uniform Commercial Code ("U.C.C."), as codified in the Revised Code of

Washington, with respect to the principle of "commercial reasonableness" in secured transactions. Dkt. No. 61 at 3; *see* RCW 62A.9A. The Decker Defendants assert that this Court erred when it "reli[ed] on *Seattle-First Nat'l Bank v. Westwood Lumber, Inc.* . . . for the proposition that 'taking contractually prescribed action to enforce the terms of a promissory note is . . . not bad faith and therefore, not commercially unreasonable.'" Dkt. No. 61 at 3. (referencing *Seattle-First Nat'l Bank v. Westwood Lumber, Inc.*, 65 Wn. App. 811, 829 P.2d 1152 (1992), *review denied*, 120 Wn.2d 1010, 841 P.2d 48). Second, the Decker Defendants argue that the Court's dismissal of the Decker Defendants' claim for equitable subrogation should have been non-prejudicial. *Id.* at 9. Third, the Decker Defendants argue that the Court's aforementioned "rel[iance] on *Seattle-First National Bank*" also led to manifest error in the Court's dismissal of the Decker Defendants' claim for equitable indemnity. *Id.* at 10. The Court considers these arguments, mindful of the stringent standard of "manifest error" that governs all motions for reconsideration. LCR 7(h)(1); *Marlyn Nutraceuticals*, 571 F.3d at 880.

**A.    Tortious Interference and Equitable Indemnity**

The Decker Defendants argue that the Court erroneously dismissed their claims of tortious interference and equitable indemnity. As to tortious interference, the Decker Defendants assert that the Court misinterpreted Washington law, resulting in the improper dismissal of their claim. As to equitable indemnity, because the two claims are related, the Decker Defendants' argument on this claim naturally flows from their argument on the other. In dismissing the claim for equitable indemnity, the Court found that its dismissal with prejudice of the tortious-interference claim established that "KeyBank [had] not commit[ed] a wrongful act." Dkt. No. 56 at 16. And because KeyBank had not done anything wrongful, it "need not indemnify the Decker Defendants for the results thereof." *Id.* Put differently, the Court's dismissal of the one claim logically required its dismissal of the other. Accordingly, in their Motion for Reconsideration,

the Decker Defendants argue that, "If this Court reconsiders its [decision regarding tortious interference] as urged, it should also reconsider its dismissal of the Decker Defendants' claim for Equitable Indemnity." Dkt. No. 61 at 10.

### 1.  Tortious Interference

The thrust of the Decker Defendants' first argument is that *Seattle-First National Bank* is not a valid interpretation of the U.C.C., because it is a 1992 case in which the Washington Court of Appeals considered an older version of the U.C.C. that has since been amended by the Washington legislature. *See* Dkt. No. 61 at 3. This Court, the Decker Defendants argue, should not have used the *Seattle-First National Bank* court's interpretation of the U.C.C., because the "antiquated" version of the U.C.C. to which it applies does not govern the loan agreements at issue in this case. *Id.* at 3–4. Specifically, the Decker Defendants assert that "[i]n 2001, the legislature *added* commercial reasonableness to U.C.C.'s definition of 'good faith.'" *Id.* at 3 (emphasis in original). By the Decker Defendants' reasoning, the Washington Court of Appeals in *Seattle-First National Bank* employed a now-obsolete construction of good faith that did not expressly include commercial reasonableness within its scope. *Id.*

The Decker Defendants argue that, because commercial reasonableness is now part of the statutory U.C.C., *as amended*, a standard of commercial reasonableness is necessarily incorporated into any contract between a lender and borrower—and, indeed, into "every contract or duty authorized by the Uniform Commercial Code"—including the loan agreements at issue here. *Id.* at 4. Therefore, the Decker Defendants argue, when this Court examines the loan agreements at issue, it must do so in consideration of the newer version of the U.C.C., not the version interpreted in *Seattle-First National Bank. Id.*

But as KeyBank points out in its Response, the Decker Defendants mischaracterize the amendments to the U.C.C. and misconstrue *Seattle-First National Bank* as obsolete. *See* Dkt. No.

63 at 4–5. The older version of the U.C.C. *did* require secured parties to act in a commercially reasonable manner when enforcing their rights, and the *Seattle-First National Bank* court considered as much in its decision to affirm a creditor's right to utilize contractually agreed-upon debt-collection methods. *See id.* at 5. That is, the updated U.C.C. does not impose upon creditors a new requirement of commercial reasonableness that the prior version did not, and the amendments do not automatically render invalid any pre-2001 interpretation of the code. Thus, the *Seattle-First*-era U.C.C. is neither outdated nor completely inapplicable to contemporary loan agreements in this regard, and *Seattle-First National Bank* remains a valid authority on the law of secured transactions in Washington.

Further, KeyBank argues that "[t]he amended good faith definition does not change the legal principle that it is not bad faith or commercially unreasonable for a secured party to simply take an action that was contractually agreed upon." *Id.* at 7. Other Ninth Circuit courts interpreting the U.C.C.'s good-faith requirement have agreed. *See Tooth Acres, LLC v. Hoodstock Ranch, LLC*, No. C20-3091, 2021 WL 7185082, at *6 (E.D. Wash. Dec. 9, 2021); *Brooks v. Caswell*, No. C14-1232, 2016 WL 7473207, at *7 (D. Or. Dec. 28, 2016). Notably, both of these decisions post-date the U.C.C. amendments relied upon by the Decker Defendants in their Motion for Reconsideration here, yet both cite a *pre-amendment* Oregon Supreme Court case for the proposition, effectively holding that what was considered good faith then is still considered good faith now. *See U.S. Nat'l Bank of Or. v. Boge*, 814 P.2d 1082, 1092 (Or. 1991) ("The obligation of good faith does not vary the substantive terms of the bargain or of the statute, nor does it provide a remedy for an unpleasantly motivated act that is expressly permitted by contract or statute."). KeyBank asserts that "[n]o court has ever held [that] a lender's issuance of 9-607 notices violates the duties to act in good faith or in a commercially reasonable manner."

Dkt. No. 63 at 8. In light of the holdings in *Tooth Acres* and *Brooks*, this Court finds no reason to be the first.

What is more, the Court agrees with KeyBank that "it is not [a lender's] decision to pursue a particular enforcement remedy, but the 'manner' in which the process is exercised, that gives rise to a claim of commercial unreasonableness." *Id.* The same official comment to RCW 62A.9A-607 cited by the Decker Defendants (*see* Dkt. No. 61 at 4) bears this out, stating that "the secured party's collection and enforcement rights . . . must be *exercised* in a commercially reasonable manner." RCW 62A.9A-607 cmt. 9 (emphasis added). That is, within the context of debt collection, where a lender maintains the right to pursue a particular remedy, the issue of commercial reasonableness applies to *how* it goes about that pursuit, not whether it opts to do so in the first place.

Finally, the standard on a motion for reconsideration is not whether the Court simply "got it wrong," as it were, but whether the movant can show "manifest error" in the Court's decision. *Taber v. Cascade Designs, Inc.*, No. C20-1633, 2024 WL 230252, at *1 (W.D. Wash. Jan. 22, 2024). The Decker Defendants have not done so. "Manifest error is, effectively, clear error." *Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, 282 F.R.D. 216, 231 (D. Ariz. 2012). "For a decision to be considered clearly erroneous, it must be more than just maybe or probably wrong; it must be dead wrong." *McCarthy v. Amazon.com, Inc.*, No. C23-263, 2023 WL 5509258, at *4 (W.D. Wash. Aug. 25, 2023) (internal quotation marks and citations omitted).

Here, as discussed above, the Court's consideration of *Seattle-First National Bank* was nowhere near dead wrong. Simply put, *Seattle-First National Bank* remains good law, and the Decker Defendants do not provide any case law to the contrary. Nor could they. Given the viability of *Seattle-First National Bank*, the Court did not err when it found that KeyBank's

issuance of the 9-607 Notices was a lender's "simpl[e] enforce[ment] of the express terms of the promissory note in this case," and therefore not bad faith. *See* Dkt. No. 56 at 12; *Seattle-First Nat'l Bank*, 65 Wn. App. at 823.

Accordingly, the Court finds no manifest error in its decision to dismiss the claim for tortious interference.

### 2. Equitable Indemnity

Because the Court opts not to reconsider its decision to dismiss the Decker Defendants' claim for tortious interference, it need not reconsider its decision to dismiss the claim for equitable indemnity.

Therefore, the Court DENIES the Decker Defendants' Motion for Reconsideration as to the Court's dismissal of the Decker Defendants' claim for tortious interference and as to the Court's dismissal of the Decker Defendants' claim for equitable indemnity.

### B. Equitable Subrogation

The Decker Defendants argue that the Court's dismissal with prejudice of their claim for equitable subrogation was erroneous, because it was a "procedural ruling," not an "adjudication of the merit of equitable subrogation claims made by the Decker Defendants." Dkt. No. 61 at 9. KeyBank does not address this issue in its Response. *See generally* Dkt. No. 63. The Decker Defendants assert that the Court's ruling on their claim for equitable subrogation "is no more than a ripeness issue that the Decker Defendants are not equitably subrogated to Traveler's [*sic*] rights until they have paid Travelers." Dkt. No. 61 at 9. As such, it is not a decision on the merits, and the attendant dismissal should have been without prejudice. *Id.*

The Court agrees. The Court predicated its dismissal on the fact that the Decker Defendants had not established a condition precedent for pleading equitable subrogation. *See* Dkt. No. 56 at 15. ("[T]he Third-Party Complaint does not indicate that the Decker Defendants

are entitled to reimbursement, if only because the Decker Defendants do not allege that they have paid anything to anyone."). This is, indeed, a procedural issue based on "a curable defect in jurisdiction: ripeness." *Wolfson v. Brammer*, 616 F.3d 1045, 1064 (9th Cir. 2010). And as a curable defect, it "should generally result in a dismissal without prejudice." *City of Oakland, Cal. v. Hotels.com LP*, 572 F.3d 958, 962 (9th Cir. 2009). For their part, KeyBank's silence on the issue indicates their concession that the Decker Defendants' position has merit. *See* LCR 7(b)(2).

Therefore, the Court GRANTS the Decker Defendants' Motion for Reconsideration, as to the Court's dismissal with prejudice of their claim for equitable subrogation.

### III.  CONCLUSION

Therefore, the Court GRANTS IN PART and DENIES IN PART the Decker Defendants' Motion for Reconsideration (Dkt. No. 61). Specifically, the Court ORDERS as follows:

1. The Court GRANTS the Decker Defendants' request regarding its claim for equitable subrogation and revises its order so that this claim is DISMISSED WITHOUT PREJUDICE.
2. The Court otherwise DENIES the Decker Defendants' motion.

Dated this 10th day of January 2025.

Tana Lin
United States District Judge

ORDER ON MOTION FOR RECONSIDERATION - 8