1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9
10

11   TRAVELERS CASUALTY AND
     SURETY COMPANY OF AMERICA, a
12   Connecticut corporation,

13                    Plaintiff,

          v.
14
     JASON P. DECKER and DEBRA A.
15   DECKER, husband and wife and the
     marital community composed thereof,
16   et al.,

17                    Defendants.

18

CASE NO. 2:24-cv-00253-TL

ORDER ON MOTION FOR PARTIAL
SUMMARY JUDGMENT

19          This matter is before the Court on Plaintiff Travelers Casualty and Surety Company of

20   America's ("Travelers") motion for partial summary judgment. Dkt. No. 69. Having reviewed

21   the motion; Defendants' response (Dkt. No. 71); Travelers' Reply (Dkt. No. 77); supplemental

22   briefing requested by the Court on October 6, 2025 (Dkt. No. 80), and submitted by the Parties

23

24

on October 10, 2025 (*see* Dkt. Nos. 81, 82); and the relevant record,[1] the Court GRANTS

Travelers' motion.

# I.    BACKGROUND

## A.    The Parties

Plaintiff is Travelers, a Connecticut corporation. Dkt. No. 1 (complaint) ¶ 3. Relevant to

this case, Travelers, acting as surety for principal Elcon Corporation ("Elcon")—a nonparty—

issued eight surety bonds in connection with Elcon's work on various public-works projects in

the Pacific Northwest.[2] *Id.* ¶ 22. The aggregated contract value of the bonds was

$132,351,275.00. *Id.*

Defendants are (1) James P. Decker and Debra A. Decker, married individuals ("the

Deckers"); (2) Passage Inc. ("Passage"), a Washington corporation; (3) WilDec LLC

("WilDec"), a Washington limited liability company; and (4) Decker & Williams LLC (Decker

& Williams"), a Washington limited liability company. *Id.* ¶¶ 4, 7–9.[3] WilDec, Passage, and

Decker & Williams are legal entities of the Deckers ("Decker Legal Entities"). Dkt. No. 71 at 13.

In July 2017, these Defendants (collectively, the "Decker Defendants" or "Indemnitors"), among

others, signed a General Agreement of Indemnity ("GAI") with Travelers "[a]s partial

inducement and consideration for Travelers' issuance of [the] surety bonds for Elcon." Dkt.

No. 1 ¶ 10; Dkt. No. 1-1 (GAI).

---

[1] Neither Party requested oral argument, and the Court finds oral argument unnecessary. *See* LCR 7(b)(4).

[2] These projects included: the SR 520 Montlake to Lake Washington I/C Bridge Replacement Project, E335 Downtown Bellevue to Spring District Project, Sound Transit East Link Extension Project, Ship Canal Water Quality Project ("SCWQP"), Lynnwood Link Extension Project, W.O. 23-17 Grand & 3rd, and Georgetown Wet Weather Treatment Station Project. Dkt. No. 1 ¶ 22.

[3] On August 20, 2024, Defendants Anthony Ray Schults, Karen Koppel Schults, Scott Elden Wood, and Olivia Ferreira-Wood were dismissed from the case. *See* Dkt. No. 54 (order of dismissal) at 2.

**B.      The General Agreement of Indemnity and Limited Liability Rider**

Under the GAI, the Decker Defendants became indemnitors for the bonds.[4] Dkt. No. 1 ¶ 13. As indemnitors, they promised to "exonerate, indemnify, and save [Travelers] harmless from and against all Loss." Dkt. No. 1-1 at 2. The GAI defined "Loss" as:

> All loss and expense of any kind or nature, including attorneys' and other professional fees, which [Travelers] incurs in connection with any Bond or this [GAI], including but not limited to all loss and expense incurred by reason of [Travelers]: (a) making any investigation in connection with any Bond; (b) prosecuting or defending any action in connection with any Bond, including any expenses incurred by [Travelers] to defend any extra-contractual claim where there has been no final adverse determination/adjudication of liability against [Travelers] on such claim; (c) obtaining the release of any Bond; (d) recovering or attempting to recover Property in connection with any Bond or this [GAI]; (e) enforcing by litigation or otherwise any of the provisions of this [GAI]; and (f) all interest accruing thereon at the maximum legal rate.

*Id.*

The GAI also gave Travelers the right to demand certain entitlements from the indemnitors, two of which are particularly relevant here. First, the GAI provided that the Indemnitors were obligated to provide Travelers with collateral security upon Travelers' demand. Under Section 5 of the GAI:

> Indemnitors agree to deposit with [Travelers], upon demand, an amount as determined by [Travelers] sufficient to discharge any Loss or anticipated Loss. . . . Sums deposited with [Travelers] pursuant to this paragraph may be used by [Travelers] to pay such claim or be held by [Travelers] as collateral security against any Loss or unpaid premium on any Bond. . . . Indemnitors agree that [Travelers] would suffer irreparable damage and would not have an adequate remedy at law if Indemnitors fail to comply with the provisions of this paragraph.

---

[4] Indemnitors Peter S. Williams, Linda Williams, and Elcon also executed the GAI. As they are not parties to this case, the Court omits them from its recitation of the facts.

*Id.* at 3. Second, the GAI obligated the Indemnitors to provide Travelers with "Books, Records and Credit" upon Travelers' demand. Under Section 10 of the GAI:

> Indemnitors shall furnish upon demand, and [Travelers] shall have the right of free access to, at reasonable times, the records of Indemnitors including, but not limited to, books, papers, records, documents, contracts, reports, financial information, accounts and electronically stored information, for the purpose of examining and copying them.

*Id.*

On July 5, 2017, the Deckers executed a Limited Liability Rider to the GAI. Dkt. No. 1-1 at 11–12. The Limited Liability Rider capped the Deckers' joint and several liability under the GAI at $5,000,000.00. *Id.* at 11. Beyond the five-million-dollar limit, the Limited Liability Rider did not otherwise affect the terms of the GAI or the relationship between Travelers and the Deckers under the GAI. *See id.* There is no evidence before the Court that the Decker Legal Entities executed any documents that might limit or cap their respective liability under the GAI.

## C.    Elcon Defaults; Travelers Demands Records and Collateral

Beginning on or about July 18, 2023, Elcon—the Principal of the surety bonds—began to implode via a series of events that ultimately led to the company's demise as a going concern. *See* Dkt. No. 70-2 (order appointing general receiver) at 2–8. "On July 18, 2023, Graham Contracting, Ltd. ('Graham'), sent Travelers a notice declaring that Elcon had defaulted under its subcontract on the SR 520 Bonded Project." Dkt. No. 70 (Fouhy Decl.) ¶ 5. In response, Travelers sent Elcon a letter, dated July 19, 2023, that requested that Elcon provide Travelers with records that would permit "a full review of [Elcon's] books, records and projects." Dkt. No. 70-1 (July 19 Letter) at 2. Travelers enumerated its requests in a 26-item list that accompanied the letter. *Id.* at 4–5. Elcon, however, did not provide the requested information and documentation. Dkt. No. 70 ¶ 6. On July 20, 2023, Graham advised Travelers that Elcon had

been terminated from the SR 520 Bonded Project. *Id.* ¶ 7. On July 25, 2023, Travelers received

two further notices of default related, respectively, to two additional Elcon subcontracts—the

E335 Downtown Bellevue to Spring District Bonded Project and the Sound Transit East Link

Extension Bonded Project. *Id.* ¶ 8. Elcon then advised Travelers that Elcon had "failed to meet

all of its payment obligations to its subcontractors on the Bonded Projects." *Id.* ¶ 9. Each of these

events—the default on the SR 520 Bonded Project, default on the E335 Downtown Bellevue to

Spring District Bonded Project, default on the Sound Transit East Link Extension Bonded

Project, and the failure to meet payment obligations—represented a separate default under the

GAI. *See* Dkt. No. 1-1 at 2.

On July 27, 2023, Travelers invoked Section 5 of the GAI and demanded that the

Indemnitors deposit $2,708,389.99 in collateral security with Travelers. Dkt. No. 70 ¶ 10; Dkt.

No. 1-1 at 25–26. The Indemnitors did not deposit the requested collateral or otherwise respond

to Travelers' demand, and on August 31, 2023, Travelers issued an updated demand to the

Deckers. Dkt. No. 70 ¶ 12; Dkt. No. 1-1 at 19–20. Travelers now demanded that the Deckers

deposit collateral security of $5,000,000.00. Dkt. No. 1-1 at 20.

On September 19, 2023, in a state-court proceeding, King County Superior Court found

Elcon "insolvent" and noted that "its business operations [were] grossly undercapitalized." Dkt.

No. 70-2 (order appointing general receiver) at 5. Elcon was "unable to sustain its future

business operations." *Id.* at 6. The Superior Court appointed a general receiver for Elcon "to

protect the claims and interests of . . . Elcon's . . . creditors by conducting an orderly wind down

and liquidation of [Elcon's] business operations." *Id.* at 6–7.

On February 23, 2024, Travelers advised the Indemnitors in "a certified, itemized

statement" how much it had paid out in connection with the Elcon surety bonds, as of February

13, 2024. Dkt. No. 70 ¶ 15; Dkt. No. 1-1 at 29–30. As of that date, Travelers had paid a net total

1    (i.e., including credits) of $6,394,455.47 in connection with claims made against the Elcon

2    bonds. Dkt. No. 70 ¶ 15.

3    On March 7, 2025, Travelers sent the Indemnitors a further demand "to furnish collateral

4    security and books and records." *Id.* ¶ 16; Dkt. No. 70-3 (March Demand Letter) at 2–3.

5    Travelers advised that, to that point, it had paid a net total of $15,132,183.36 in connection with

6    claims made against the Elcon bonds. Dkt. No. 70 ¶ 16. Travelers avers that, as of the date of its

7    motion for summary judgment, "none of the Indemnitors have furnished any collateral nor any of

8    the books and records demanded." *Id.* ¶ 17.

9    On October 2, 2025, Defendant WilDec and Defendant Decker & Williams each filed a

10    petition for bankruptcy under Chapter 11 of the Bankruptcy Code in the United States

11    Bankruptcy Court for the Eastern District of Washington. Dkt. No. 79 (suggestion of bankruptcy)

12    at 2, 4–8, 10–14.

13    **D.    Procedural Background**

14    On February 23, 2024, Travelers filed the instant action in this Court, against all of the

15    Indemnitors who had executed the GAI, including the Deckers, Passage, WilDec, and Decker &

16    Williams ("the Decker Defendants," as distinct from "the Deckers," *see supra* Section I.A), as

17    well as Anthony Ray Schults, Karen Koppel Schults, and the marital community composed

18    thereof ("the Schults Defendants"); and Scott Elden Wood, Olivia Ferreira-Wood, and the

19    marital community composed thereof ("the Wood Defendants"). Dkt. No. 1. Travelers pleaded

20    four causes of action against all Defendants: breach of contract (*id.* ¶¶ 27–33); specific

21    performance—collateral (*id.* ¶¶ 34–42); specific performance—books and records (*id.* ¶¶ 43–48);

22    and *quia timet* (*id.* ¶¶ 49–57).[5] In short, Travelers seeks to enforce the Indemnitors' obligations

23

24    _____

[5] "*Quia timet* is equitable relief which can compel the principal to pay the debt after it has become due, but its use has also been extended to compel the principal to furnish the surety indemnity against possible loss where the surety

under the GAI, specifically with respect to the provision of collateral security under Section 5, the provision of books and records under Section 10, and injunctive relief that prevents the Indemnitors "from selling, transferring, disposing, pledging, encumbering, or liening all assets and property unless and until Defendants have posted sufficient collateral as demanded." *Id.* at 11–12.

On March 25, 2024, the Decker Defendants answered Travelers' complaint. Dkt. No. 20. In their answer, these Defendants also pleaded cross-claims against the Schults Defendants and Wood Defendants, seeking equitable indemnity or, in the alternative, equitable contribution, of $300,000 from the Schults Defendants and $300,000 from the Wood Defendants. *Id.* at 11 ¶¶ C10–C11.[6] That is, to the extent that the Schults Defendants and Wood Defendants disgorged funds to Travelers, the Decker Defendants wanted to be credited for it in Travelers' accounting of damages under the GAI.

The Decker Defendants also pleaded a third-party complaint against Third-Party Defendants KeyBank, N.A., and Dale Conder, a Senior Vice President of KeyBank. *Id.* at 12 ¶¶ D1–D69. The Court summarized the claims of the Decker Defendants' third-party complaint in its order dismissing that complaint. *See* Dkt. No. 56 at 3–5. In sum, the Decker Defendants alleged that, when KeyBank endeavored to collect on a loan it had made to Elcon, KeyBank undertook such efforts unlawfully—or, at the very least, unfairly and unreasonably—and

---

has reasonable grounds for anticipating that his rights are being jeopardized and that he will incur a liability by conduct of the principal." *Selective Ins. Co. of Am. v. Kuan-Tsan Yu*, No. C14-5888, 2014 WL 12674384, at *3 (W.D. Wash. Nov. 21, 2024) (citing *Milwaukie Constr. Co. v. Glen Falls Ins. Co.*, 367 F.2d 964 (9th Cir. 1966)). "*Quia Timet* is the right of a surety to demand that the principal place the surety in immediate funds when there are reasonable grounds to believe that the surety will suffer a loss in the future because the principal is likely to default on its primary obligation to the creditor." *Id.* (citing *Borey v. Nat'l Union Fire Ins. Co.*, 934 F.2d 30 (2d Cir. 1991)).

[6] Just as the Deckers had executed a Limited Liability Rider that limited their exposure to $5,000,000, the Schultses and Woods had executed limited liability riders that limited their aggregate exposure to $300,000. *See* Dkt. No. 1-1 at 14–16.

triggered the series of events that led to Elcon's collapse and to the Decker Defendants' default on the GAI. *See* Dkt. No. 20 at 23 ¶¶ D40–D41; Dkt. No. 56 at 5. That is, the Decker Defendants alleged that, but for the actions of KeyBank and Conder, there would be no lawsuit between Travelers and any of the Defendants here. KeyBank and Conder moved to dismiss the Decker Defendants' third-party complaint (Dkt. No. 46), and on October 28, 2024, the Court granted the motion, dismissing each of the Decker Defendants' three third-party claims (Dkt. No. 56).

Meanwhile, on July 19, 2024, Travelers advised the Court that it had settled its claims against the Schults Defendants and the Wood Defendants. Dkt. No. 52 (Fouhy Decl.) ¶ 3. Consequently, Travelers sought to voluntarily dismiss its claims against those Defendants. Dkt. No. 51 (motion to dismiss). On August 20, 2024, the Court granted Travelers' motion and dismissed the Schults Defendants and Wood Defendants from the complaint. Dkt. No. 54. Then, on December 5, 2024, the Decker Defendants followed suit and moved to dismiss their crossclaims against the Schults Defendants and Wood Defendants. Dkt. No. 58. The Court granted the Decker Defendants' motion the same day, thus terminating the Schults Defendants' and Wood Defendants' participation in this case. Dkt. No. 59.

On April 25, 2025, Travelers filed the instant motion for partial summary judgment. Dkt. No. 69. On October 2, 2025, during the pendency of the motion, WilDec and Decker & Williams filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code in the Eastern District of Washington. *See* Dkt. No. 79.

## II.    LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, the Court does not make credibility determinations, nor does it weigh the evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Munden v. Stewart*

1    *Title Guar. Co.*, 8 F.4th 1040, 1044 (9th Cir. 2021). The inquiry turns on "whether the evidence

2    presents a sufficient disagreement to require submission to a jury or whether it is so one-sided

3    that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. A genuine triable

4    issue of material fact exists where "the evidence is such that a reasonable jury could return a

5    verdict for the nonmoving party." *Id.* at 248; *see also McSherry v. City of Long Beach*, 584 F.3d

6    1129, 1135 (9th Cir. 2009) (explaining that this is the inquiry at the summary judgment stage,

7    "[s]tripped to its core"). Additionally, "all justifiable inferences" must be drawn in the

8    nonmovant's favor, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S.

9    144, 158–59 (1970)), "only in the sense that, where the facts specifically averred by [the non-

10    moving] party contradict facts specifically averred by the movant, the [summary judgment]

11    motion must be denied," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

12        Under Federal Rule of Civil Procedure 56, to establish that a fact cannot be genuinely

13    disputed, the movant can either cite the record or show "that the materials cited do not establish

14    the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible

15    evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). Once the movant has made such a

16    showing, "its opponent must do more than simply show that there is some metaphysical doubt as

17    to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586

18    (1986) (internal citation omitted); *see also Anderson*, 477 U.S. at 252 (specifying that the non-

19    movant must show more than the "mere existence of a scintilla of evidence"); *accord In re*

20    *Oracle Corp. Sec. Litig.,* 627 F.3d 376, 387 (9th Cir. 2010). The non-movant "bears the burden

21    of production under Rule 56 to 'designate specific facts showing that there is a genuine issue for

22    trial.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S.

23    317, 324 (1986)). The Court will enter summary judgment "against a party who fails to make a

24    showing sufficient to establish the existence of an element essential to that party's case, and on

1    which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322 (1986); *see also*

2    *Parth v. Pomona Valley Hosp. Med. Ctr.*, 630 F.3d 794, 798, 805 (9th Cir. 2010) (affirming

3    grant of summary judgment against appellant who had "failed to adduce any evidence or

4    authority to support her claim"), *cert. denied*, 563 U.S. 1008 (2011).

**III.    DISCUSSION**

**A.    WilDec's and Decker & Williams's Bankruptcies**

7        First, the Court discusses the ramifications of WilDec's and Decker & Williams's recent

8    petitions for bankruptcy. "When a debtor files a bankruptcy petition, an automatic stay

9    immediately arises." *Hillis Motors, Inc. v. Hawaii Auto. Dealers Ass'n*, 997 F.2d 581, 585 (9th

10   Cir. 1993) (citing 11 U.S.C. § 362(a)). Simply put, the automatic-stay provision of the

11   Bankruptcy Code "prohibits the continuation of judicial actions" against the bankruptcy

12   petitioners. *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1214 (9th Cir. 2002). Therefore, as

13   to Defendant WilDec and Defendant Decker & Williams, this case is STAYED pursuant to 11

14   U.S.C. § 362(a).

15       With respect to the Deckers and Passage, however, the case is not stayed. The Decker

16   Defendants assert that the stay should be extended to include the Deckers, too,[7] because "unusual

17   circumstances" warrant as much. Dkt. No. 81 at 3 (citing *A.H. Robins Co., Inc. v. Piccinin*, 788

18   F.2d 994, 999 (4th Cir. 1986)). This argument is not persuasive. In *A.H. Robins*, the Fourth

19   Circuit carved out an "unusual circumstances" exception to the rule that the automatic stay

20   applies only to debtors who file for bankruptcy. *A.H. Robins*, 788 F.2d at 999. In the Fourth

21   Circuit, the exception applies—and the automatic stay may be extended to additional parties—

22

23   ───────────────
     [7] The Decker Defendants do not specifically discuss Passage in their response or in their supplemental briefing. *See*

24   *generally* Dkt. Nos. 71, 81. Passage has not been dismissed from this lawsuit, and Passage has not filed for
     bankruptcy. Consequently, Traveler's claims against Passage are live and pending.

1    where "there is such identity between the debtor and the third-party defendant that the debtor

2    may be said to be the real party defendant and that a judgment against the third-party defendant

3    will in effect be a judgment or finding against the debtor." *A.H. Robins*, 788 F.2d at 999. But

4    *A.H. Robins* is inapposite here. In *Matter of Lockard*, the Ninth Circuit examined, and rejected,

5    the Fourth Circuit's *A.H. Robins* exception. *See Matter of Lockard*, 884 F.2d 1171, 1179 (9th

6    Cir. 1989) ("We have not explicitly recognized such an exception, and we decline to do so in this

7    case."); *see also Int'l Petroleum Prods. & Additives Co. v. Black Gold S.A.R.L.*, 115 F.4th 1202,

8    1217 (9th Cir. 2024) (noting that the Ninth Circuit has "declined to adopt the Fourth Circuit's

9    'unusual situation' exception on several occasions" and "finding good reason" to do so again).

10   Therefore, the Court will not consider an "unusual situation" exception here. The Decker

11   Defendants do not propose any further additional basis for extending the automatic stay to the

12   Deckers, and the Court will not hunt for one. Given the Ninth Circuit's explicit rejection of the

13   Decker Defendants' position, the Court declines to extend the automatic stay to the Deckers (or,

14   for that matter, to Passage).

15       Further, because the Indemnitors entered into the GAI "jointly and severally," the

16   imposition of a stay as to Defendants WilDec and Decker & Williams does not bear on the

17   Deckers' and Passage's obligations under the GAI. *See* Dkt. No. 1-1 at 3 ("The obligations of

18   Indemnitors . . . are joint and several."). "A joint obligor is liable for the full amount of the

19   promised performance, not for 'his fair share of it.'" *Turner v. Gunderson*, 60 Wn. App. 696,

20   704, 807 P.2d 370 (1991).

21   **B.    Specific Performance**

22       The Court now turns to whether Travelers is entitled to the Deckers' and Passage's

23   specific performance of their collateral-security and books-and-records obligations under the

24   GAI. "In Washington, '[i]ndemnity agreements are interpreted like any other contracts.'" *Ins. Co.*

*of the W. v. Alpha Dev. Corp.*, No. C09-5426, 2009 WL 5064041, at *3 (W.D. Wash. Dec. 15, 2009) (alteration in original) (quoting *Scott Galvanizing, Inc. v. Nw. EnviroServices, Inc.*, 120 Wn.2d 573, 580, 844 P.2d 428 (1993)). Given the express language of the GAI, the question of whether Travelers is entitled to specific performance here is one of contract interpretation. "Under Washington law, if a contract 'is clear and unambiguous, the court must enforce the contract as written; it may not modify the contract or create ambiguity where none exists.'" *Kelley-Ross & Assocs., Inc. v. Express Scripts, Inc.*, No. 23-3634, 2025 WL 251326, at *1 (9th Cir. Jan. 21, 2025) (quoting *Lehrer v. Washington Dep't of Soc. & Health Servs.*, 101 Wn. App. 509, 515, 5 P.3d 722 (2000)). In the context of surety bonds, "[c]ourts will routinely specifically enforce collateral indemnity provisions." *Travelers Cas. & Sur. Co. of Am. v. Mastro*, No. C10-33, 2010 WL 11688422, at *2 (W.D. Wash. Sept. 8, 2010). "Numerous courts have held that a surety's right to collateral security is determined solely by the express terms of its indemnity agreement." *Id.* at *3 (collecting cases); *see also Safeco Ins. Co. of Am. v. Schwab*, 739 F.2d 431, 433 (9th Cir. 1984) ("If a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced." (quoting *Marine Midland Tr. Co. v. Alleghany Corp.*, 28 F. Supp. 680, 683–84 (S.D.N.Y. 1939))).

Section 1 of the GAI lists 10 events that constitute default of that contract; five are relevant here:

> (a) a declaration of Contract default by any Obligee; (b) actual breach or abandonment of any Contract; (c) a breach of any provision of [the GAI]; (d) failure to make payment of a properly due and owing bill in connection with any Contract; . . . [and] (g) any Indemnitor's becoming the subject of any proceeding or agreement of bankruptcy, receivership, insolvency, or creditor assignment, or actually becoming insolvent.

Dkt. No. 1-1 at 2. Although "default" and "breach" are legally distinct from one another, *see Colorado Structures, Inc. v. Ins. Co. of the W.*, 161 Wn.2d 577, 591, 167 P.3d 1125 (2007), in

circumstances similar to those presented in the instant case, courts have treated an indemnitor's

failure to provide collateral as a material breach of an indemnity agreement, such that the

specific performance of posting collateral is an appropriate remedy. *See, e.g.*, *Mastro*, 2010 WL

11688422, at *3; *Alpha Dev. Corp.*, 2009 WL 5064041, at *4. The same applies where an

indemnitor has failed to provide access to the indemnitor's books and records despite having

promised to do so in an indemnity agreement. *See, e.g.*, *RLI Ins. Co. v. Nexus Servs. Inc.*, 470 F.

Supp. 3d 564, 580–81 (W.D. Va. 2020); *Colonial Sur. Co. v. A&R Capital Assocs.*, 420 F. Supp.

3d 38, 48–49 (E.D.N.Y. 2017).

Section 16 of the GAI provides that "[Travelers] shall be entitled to specific performance

of the terms of this Agreement in addition to any other remedy at law or equity." Dkt. No. 1-1 at

4. This language is clear and unambiguous, and the Decker Defendants do not argue otherwise.

The only reasonable interpretation of the contract is that the Parties have agreed that specific

performance is an appropriate—and, in fact, mandatory—remedy in the event of the

Indemnitors' breach of the GAI. The Court now turns the question of whether the Indemnitors

have, in fact, breached the applicable provisions of the GAI.

### 1.    Collateral Security

Section 5 of the GAI obligates the Indemnitors, including the Deckers and Passage, to

"deposit . . . , upon demand, an amount as determined by [Travelers] sufficient to discharge any

Loss or anticipated Loss." Dkt. No. 1-1 at 3. The contractual language gives Travelers the

discretion to issue such a demand:

> [Travelers] shall have the right, in its sole discretion, to determine
> for itself and Indemnitors whether any claim, demand or suit
> brought against [Travelers] or any Indemnitor in connection with
> or relating to any Bond shall be paid, compromised, settled, tried,
> defended or appealed, and its determination shall be final, binding
> and conclusive upon the Indemnitors.

1    *Id.* at 2. "Amounts due to [Travelers] shall be payable on demand." *Id.*

2        The record is clear that Travelers, acting under its contractual authority, determined that

3    it would need to pay out on claims and/or demands brought "in connection with or relating to

4    any Bond." Travelers demanded collateral security on multiple occasions. Most recently, on

5    March 7, 2025, Travelers sent the Deckers a letter, accompanied by an itemized statement,

6    demanding that collateral security be deposited and demonstrating that, "[t]o date, Travelers

7    ha[d] incurred a total Loss of $15,132,183.36." Dkt. No. 70-3 at 2, 3, 4–13; *see also* Dkt. No. 1-1

8    at 19–20, 25–26. In so doing, Travelers triggered the Indemnitors' obligation to deposit

9    collateral. As Travelers asserts, "the only requirement [for Travelers to demand collateral] is that

10   Travelers determines an amount sufficient to discharge its Loss or anticipated Loss and demands

11   collateral security in such amount." *Id.* The Decker Defendants do not refute this interpretation,

12   and the plain language of the GAI supports it.

13       The Decker Defendants also do not dispute Travelers' assertion that, as of April 25, 2025,

14   "none of the Indemnitors have furnished any collateral . . . ." Dkt. No. 69 at 10. For their part, the

15   Decker Defendants argue that specific performance is not, as a matter of law, available to

16   Travelers. *See* Dkt. No. 71 at 17–21. Such an argument, however, ignores the clear language of

17   the GAI, which expressly entitles Travelers to the remedy of specific performance. *See* Dkt.

18   No. 1-1 at 4. Upon executing the contract, the Indemnitors agreed that Travelers "would suffer

19   irreparable damage and would not have an adequate remedy at law if Indemnitors fail to comply

20   with the provisions of the [collateral security section]" of the GAI. *Id.* at 3. Given that language,

21   the Deckers' argument that "[t]he Losses sustained by Travelers are not remedied by a specific

22   performance order for collateral security" is untenable. Dkt. No. 71 at 20; *see also Fancher*

23   *Cattle Co. v. Cascade Packing, Inc.*, 26 Wn. App. 407, 410, 613 P.2d 178 (1980) ("A contract of

24   a guarantor without compensation will be strictly construed. The guaranty should receive a

1  liberal, fair, and reasonable interpretation. When, *according to rules of construction*, the intent of

2  the parties has been ascertained, they are bound. The guaranty should not be given an unfair or

3  strained interpretation to restrict or diminish the guarantor's obligation.") (emphasis added).

4         Therefore, as to Travelers' request for specific performance with respect to collateral

5  security, Travelers' motion is GRANTED. Pursuant to Section 5 of the GAI, as modified by the

6  Limited Liability Rider, the Deckers and Passage SHALL deposit $15,132,183.36 in collateral

7  security with Travelers. The Deckers' obligation, however, is limited to $5,000,000.00 pursuant

8  to their Limited Liability Rider.

9         **2.      Records and Books**

10        Just as the GAI entitles Travelers to specific performance with respect to collateral

11  security, it also entitles Travelers to specific performance with respect to the provision of books

12  and records. Section 10 of the GAI obligates the Indemnitors, including the Deckers and

13  Passage, to "furnish, upon demand, . . . at reasonable times, the records of Indemnitors,

14  including, but not limited to books, papers, records, documents, contracts, reports, financial

15  information, accounts and electronically stored information, for the purpose of examining and

16  copying them." Dkt. No. 1-1 at 3. The only limitation placed upon Travelers in making such a

17  demand is that Travelers may only do so "at reasonable times." *Id.* Courts have interpreted this

18  exact contractual language as providing that a Loss (or anticipated Loss)—as that term is defined

19  in the GAI—is demonstrative of a "reasonable time[]" for a surety to demand the Indemnitors'

20  records. *See, e.g.*, *Frankenmuth Mut. Ins. Co. v. Nat'l Bridge Builders, LLC*, No. C22-24, 2023

21  WL 5340919, at *15 (W.D.N.C. Aug. 18, 2023); *Travelers Cas. & Sur. Co. of Am. v. J.O.A.*

22  *Constr. Co.*, No. C07-13189, 2009 WL 928848, at *1 (E.D. Mich. Mar. 31, 2009). The Court

23  finds no reason to interpret the language differently.

24

On at least two occasions—July 19, 2023, and March 7, 2025—Travelers invoked Section 10 of the GAI and requested that the Indemnitors provide books and records to Travelers. *See* Dkt. Nos. 70-1, 70-3. Travelers asserts that "the March 2025 Demands (like the earlier demand letter from July 19, 2023) are all that was required to trigger Indemnitors' obligation to furnish the records demanded." Dkt. No. 69 at 14. The contractual language supports this interpretation, and the Decker Defendants do not plausibly assert otherwise. Instead, the Decker Defendants attempt to undermine Travelers' *motive* in seeking the records (*see* Dkt. No. 71 at 21–22), an approach that ignores the terms of the GAI to which the Indemnitors agreed when they executed that contract.

Therefore, as to Travelers' request for specific performance with respect to books and records, Travelers' motion is GRANTED. Pursuant to Section 10 of the GAI, the Deckers and Passage SHALL produce to Travelers the records requested in Travelers' March 2025 letter.

## C.    Judgment Against the Deckers

Finally, Travelers requests that the Court enter judgment of $5,000,000.00 against the Deckers—their maximum liability under the Limited Liability Rider—for their failure to "exonerate, indemnify, and save [Travelers] harmless from and against all Loss." Dkt. No. 69 at 15. In other words, Travelers asks the Court to find the Deckers in breach of Section 3 of the GAI. For their part, the Decker Defendants argue that "an adverse judgment is not warranted until resolution of the indemnitor's [*sic*] affirmative defenses, including for failure to mitigate damages, and a final adjudication of the amounts due and owing." Dkt. No. 71 at 15.

Under the terms of the GAI, "[a]n itemized, sworn statement by an employee of [Travelers], or other evidence of payment, shall be prima facie evidence of the propriety, amount, and existence of Indemnitor's liability." Dkt. No. 1-1 at 2. Here, the March 7, 2025, Demand Letters that Travelers sent to the Decker Defendants include an *itemized* statement that

1    demonstrates liability. *See* Dkt. No. 70-3 at 4–7, 10–13. But the statement is not sworn. *Compare*

2    Dkt. No. 1-1 at 29–30 (itemized statement of losses testified to "under penalty of perjury"), *with*

3    Dkt. No. 70-3 at 4–7, 10–13 (itemized statement of losses without such attestation). It is not,

4    therefore, prima facie evidence of loss under the GAI. However, the February 16, 2024,

5    itemized, sworn statement that Travelers attached to its complaint *is* prima facie evidence of loss.

6    Dkt. No. 1-1 at 29–30. It indicates losses of $6,394,455.47. *Id.* at 30. For the purpose of

7    summary judgment, then, the Court considers Travelers to have presented prima facie evidence

8    of $6,394,455.47 in losses.[8]

9        The Decker Defendants do not adequately dispute this figure. The Decker Defendants'

10   argument is muddled, but they appear to allege that Travelers should have been able to round up

11   funds such that Travelers' sustained losses might have been lower—i.e., that Travelers should

12   have mitigated its damages more effectively. For example, the Decker Defendants posit, "There

13   should have been up to $6 million extra dollars on Elcon's contract [for the SR 520 Project] to

14   get the job completed before exposing Travelers' bond." Dkt. No. 71 at 10. As to the SCWQP

15   Tunnel Storage Project, the Deckers and Passage posit, "There should have been up to $1 million

16   extra dollars on Elcon's contract to get the job completed before exposing Travelers' bond." *Id.*

17   But "should have been" is speculative at best, and in an opposition to summary judgment, this is

18   not good enough. *See Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558–59

19   (9th Cir. 1991) (rejecting "tenuous speculations" as a basis for competently disputing genuine

20   issues of fact).

---

22   [8] Unlike Section 5 of the GAI, which entitles Travelers to demand collateral from the Indemnitors in "an amount as
     determined by [Travelers] sufficient to discharge any Loss or anticipated Loss," Section 3 of the GAI specifically

23   contemplates "[a]n itemized, sworn statement" as "prima facie evidence of the propriety, amount and existence of
     Indemnitors' liability." *Compare* Dkt. No. 1-1 at 3, *with id.* at 2. That is to say, the appropriate amount of collateral
     may be "determined" by Travelers as Travelers sees fit, but the appropriate amount of liability exposure must be

24   substantiated with competent evidence.

What is more, the Decker Defendants support their assertions with a single citation of "*See generally, Declaration of Ryan Sternoff* with Exhibits thereto." Dkt. No. 71 at 10. The Sternoff Declaration, along with the attached exhibits, runs to 510 pages. It includes invoices, emails, and letters, quotes, purchase orders, and spreadsheets. Without any guidance as to the relevance and import of these documents, none of it is helpful to the Court. "Pursuant to the Local Civil Rules, parties must support factual assertions with a citation to the record, including a pincite to the relevant page or pages." *Ford v. BNSF Ry. Co.*, No. C16-1383, 2017 WL 6209582, at *3 (W.D. Wash. Dec. 9, 2017) (citing LCR 10(e)(6)). "The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *see also Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1085 (8th Cir. 1999) ("[A] district court is not obligated to wade through and search the entire record for some specific facts which might support the nonmoving party's claim." (citation modified)); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." (citation modified)). The Court will not dig through these documents to find whatever it is that the Decker Defendants assert is there. *See Zaragoza v. County of Riverside*, No. C20-1381, 2024 WL 661177, at *3 (C.D. Cal. Jan. 4, 2024) (refusing to "search for truffles buried [with]in" 219 pages of records).

Similarly, the Decker Defendants have not adequately substantiated their allegations that Travelers' evaluation and payout of monies owed under the bonds did not comport with the "implied duty of good faith" that Washington law imputes into the GAI. *See* Dkt. No. 71 at 24; *see also Travelers Cas. & Sur. Co. of Am. v. Flawless Walls LLC*, No. C22-178, 2024 WL

71706, at *5 (E.D. Wash. Jan. 5, 2024) (discussing surety's implied duty of good faith under indemnification agreement). The Decker Defendants' assertion that "there remains [sic] good faith questions as to whether Travelers made surety payments to general contractors (including for non-exclusive example on the SR 520 and the SCWQP Tunnel Storage projects) that were not due and not covered by the scope of Travelers' bond commitments" is conclusory, and they do not point to any specific evidence that substantiates such an assertion. It is not enough to survive summary judgment to broadly assert that a cloud of "good faith questions" might cast doubt on the propriety of Travelers' surety payments; the Decker Defendants must ask such questions explicitly and, further, they must alert the Court to evidence that demonstrates the existence of a genuine issue of fact as to the answers to those questions. *See, e.g.*, *Travelers Cas. & Sur. Co. of Am. v. Highland P'ship*, No. C10-2503, 2012 WL 5928139, at *8 (S.D. Cal. Nov. 26, 2012) (finding summary judgment in favor of surety appropriate where indemnitors generally alleged bad faith, but failed to "explicitly contest," payments "expended in settlement on Bond claims").

The Decker Defendants assert further that summary judgment is inappropriate given their affirmative defenses, which they list in their opposition to summary judgment. Dkt. No. 71 at 23–24. Travelers asserts that the Decker Defendants' "Response merely recites their affirmative defenses, without providing evidence to support the requisite elements to establish such defenses." Dkt. No. 77 at 13. The Court agrees. The Decker Defendants argue that "the Court should not . . . resolve the affirmative defenses as a matter of law before the indemnitors have had the opportunity to put the facts supporting their affirmative defenses before the Court." Dkt. No. 71 at 24. But the Decker Defendants have had such an opportunity—either by moving for summary judgment themselves on those affirmative defenses, or by sufficiently presenting them here, in their opposition to Travelers' motion for summary judgment. They have failed to do so.

The Decker Defendants assert, incorrectly, that it is "the burden of the moving party to set forth the basis of summary judgment on each claim, counter-claim, and affirmative defense." *Id.* at 23. This statement ignores the essential mechanics of summary judgment, which take into account which party bears the burden of proof at trial, not merely which party has moved for summary judgment:

> Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case. Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial. This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence. The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue.

*In re Oracle Sec. Litig.*, 627 F.3d at 387 (internal citations omitted). Due in no small part to the Decker Defendants' lackluster efforts to draw the Court's attention to probative evidence, the Decker Defendants have not "designate[d] specific facts demonstrating the existence of genuine issue for trial." Such evidence might be present among the 128 pages of the Bianchi Declaration (Dkt. No. 72), the 126 pages of the Decker Declaration (Dkt. No. 73), the 82 pages of the Draper Declaration (Dkt. No. 74) or the 510 pages of the Sternoff Declaration (Dkt. No. 75), but the Decker Defendants have not specifically indicated what it might be, and where it might be found.

Given that the agreed-to language in the GAI makes Travelers' sworn, itemized statement "prima facie evidence of the propriety, amount and existence of Indemnitors' liability" (Dkt. No. 1-1 at 2), and that such evidence is unrebutted by the Decker Defendants with anything other than a generic reference to a declaration attached to their response brief, the Court finds that Travelers has demonstrated an undisputed loss of $6,394,455.47 (Dkt. No. 1-1 at 30.). This exceeds the maximum liability to which the Deckers might be exposed, so the Court will apply the agreed-upon amount of $5,000,000 from the Deckers' Limited Liability Rider.

#### IV.    CONCLUSION

Therefore, Travelers' Motion for Partial Summary Judgment (Dkt. No. 69) is GRANTED. It is hereby ORDERED:

(1)    The case is STAYED pursuant to 11 U.S.C. § 362(a), as to Defendant WilDec and Defendant Decker & Williams.

(2)    Defendants Jason P. Decker, Debra P. Decker, and Passage SHALL deposit with Travelers collateral security in the amount of $15,132.183.36. The Deckers' collateral-security deposit SHALL not exceed $5,000,000.00.

(3)    Defendants Jason P. Decker, Debra P. Decker, and Passage SHALL provide to Travelers the records demanded in Travelers' March 7, 2025, Demand Letter.

(4)    Judgment is ENTERED in favor of Travelers and against Defendants Jason P. Decker and Debra P. Decker in the amount of $5,000,000.00.


Dated this 20th day of October, 2025

Tana Lin
United States District Judge